IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:20cv835 (LMB/IDD) |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment. [Dkt. Nos. 19 and 21]. The plaintiff, John S.[1] ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("defendant" or "SSA") denying plaintiff's May 25, 2018 application for supplemental security income ("SSI"), in which he claimed disability beginning June 17, 2017. For the reasons stated below, defendant's motion for summary judgment will be granted and plaintiff's motion for summary judgment will be denied.

I. PROCEDURAL HISTORY

Plaintiff is a 62 year old former librarian, for whom this is a second effort to obtain social security benefits based on his mental health impairments.[2] Plaintiff first applied in 2014 for

---

[1] On May 1, 2018, the Committee on Court Administration and Case Management of the Judicial Conference encouraged district courts to adopt the practice of using only the first name and last initial of any non-governmental party in opinions in social security cases. The Local Rules Committee of the United States District Court for the Eastern District of Virginia has recommended adoption of this practice. Accordingly, this opinion refers to the plaintiff by his first name and last initial.

[2] Plaintiff, who was 59 years old when he filed his application for SSI benefits, is considered a person of advanced age. The SSA considers advancing age to be a limiting factor in an applicant's ability to adjust to new work. 20 C.F.R. 416.963.

Disability Insurance Benefits ("DIB"), claiming disability beginning September 29, 2009. After that claim was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held, and the ALJ issued a decision on December 16, 2016 (the "2016 ALJ Decision") finding that the plaintiff was not disabled. [AR 63-76].

To determine whether plaintiff was disabled during the period from September 29, 2009 to December 31, 2014,[3] the ALJ conducted the five-step sequential analysis. After considering the evidence, the ALJ concluded that the plaintiff had the severe impairments of anxiety disorder and avoidant personality disorder but these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ went on to conclude that plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can have occasional exposure to supervisors and coworkers; he can have only brief superficial interaction with the general public; and he cannot perform production-rate work but he can perform goal-oriented work." [AR 67]. Finally, the ALJ concluded that plaintiff was unable to perform his past work as a librarian but was able to perform other work for which there were a significant number of jobs in the national economy. [AR 75]. Plaintiff appealed that decision to this court and, on August 13, 2018, that decision was affirmed. John S. v. Berryhill, 1:17-cv-00897 (LO/IDD). Plaintiff did not seek further appellate review.

---

[3] Because the plaintiff had "acquired sufficient quarters of coverage to remain insured through December 31, 2014" [AR 63] the ALJ considered whether plaintiff presented evidence to establish that he was disabled before that date.

On June 21, 2018, while review of his DIB appeal was pending before this court, plaintiff filed this claim for SSI,[4] in which he alleges disability due to generalized anxiety disorder and a sleep disorder with an onset date of June 17, 2017. Plaintiff's claim was denied initially [AR 92-93] and on reconsideration [AR 94-105]. The plaintiff then requested a hearing before an ALJ, and a video hearing was held on August 8, 2019. The plaintiff was represented by counsel at the hearing. In addition to the plaintiff, a vocational expert testified.

On August 29, 2019, the ALJ issued his decision, finding that the plaintiff was not disabled as of May 25, 2018, the date upon which he filed his application.[5] [AR 27]. In reaching his conclusion, the ALJ conducted the required five-step sequential analysis and discussed the evidence; evaluated the amount of weight to be given to the 2016 ALJ Decision, to plaintiff's subjective statements, and to state agency experts and plaintiff's treating psychiatrist; and issued an eleven-page decision, in which he concluded that although plaintiff had "the following severe impairments: generalized anxiety disorder, an adjustment disorder, and avoidant personality disorder," [AR 18] none of plaintiff's impairments, or combination of impairments, "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I." [AR 19].

The ALJ then conducted an RFC analysis. Recognizing the passage of time and the availability of additional medical evidence that "documents the presence of greater restrictions in the [plaintiff's] ability to interact with the general public and tolerate stress in the workplace,"

---

[4] SSI benefits are intended to "assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110.

[5] SSI benefits are not payable before the month following the month in which the application is filed. 20 C.F.R. § 335.

3

the ALJ only afforded the 2016 RFC finding "just some weight." [AR 21]. Indeed, the ALJ added new and greater limitations to plaintiff's RFC. For example, where the 2016 RFC stated that the plaintiff could "have only brief superficial interaction with the general public," the 2019 RFC stated that plaintiff could "never interact with the general public." The 2019 RFC added the limitation that the plaintiff requires breaks after concentrating for two hours and "is limited to performing simple, routine tasks." Finally, the 2019 RFC replaced the 2016 finding that plaintiff "cannot perform production-rate work, but he can perform goal-oriented work" with a more fulsome description of plaintiff's limitations:

> he cannot perform work requiring fast-paced production quotas, but rather goal-oriented work; and he requires a low stress work environment, defined as requiring only occasional independent decision-making or use of work-related judgment and no responsibility for the safety of others.

[AR 20-21]. The ALJ supported his RFC determination with more than four pages of analysis of the objective and subjective evidence in the record. After determining the plaintiff's RFC, the ALJ concluded that the plaintiff could not perform his past relevant work.

Finally, at step five of the analysis the ALJ concluded that, taking into account the plaintiff's RFC, age, education, and work experience, he had the ability to perform jobs that exist in significant numbers in the national economy, including Laundry Worker, Production Helper, and Landscape Laborer. [AR 26-27]. The plaintiff requested Appeals Council review of that decision. That request was denied on May 19, 2020. As a result, the decision of the ALJ because the Commissioner's final decision.

## II. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, plaintiff contests the RFC determination, arguing that the ALJ did not explain how the facts support his RFC determination

and did not define "fast-paced production quotas." Second, plaintiff argues that the ALJ applied the wrong legal standard in his consideration of the plaintiff's subjective statements.

### A. Standard of Review

Under the Social Security Act, a district court will affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (quoting Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal quotations and citations omitted). In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). It is the ALJ's duty to resolve evidentiary conflicts, not the reviewing court, and the ALJ's decision must be sustained if supported by substantial evidence. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Analysis

Plaintiff argues that the ALJ merely summarized the medical evidence and assessed plaintiff's credibility without explaining how that evidence supports his RFC determination. Contrary to plaintiff's assertion, the ALJ provided sufficient explanation of his reasoning to allow the Court to find that the RFC determination was supported by

substantial evidence. First, the ALJ evaluated the weight to be given to the 2016 ALJ decision. Rather than adopting the 2016 determination wholesale, the ALJ explained that the evidence since 2016 affected the weight that he would give the 2016 RFC. The ALJ next conducted a detailed analysis of plaintiff's medical records and the findings of two state agency reviewing psychologists and considered the opinion of plaintiff's treating psychiatrist.

After reviewing plaintiff's medical records, the ALJ summarized how the facts supported his conclusions:

> The claimant has stated that his symptoms prevent [him] from working because he is uncomfortable around other people, experiences difficulty leaving his home, is fatigued due to sleep disturbances, has problems concentrating, remembering information, and following instructions, and struggles to complete many routine daily tasks. The objective evidence, however, does not fully support these statements. Mental status examinations do reveal disturbances in the claimant's mood. Yet, otherwise, evaluations are unremarkable, with the claimant typically failing to display any deficits in affect, eye contact, insight, judgment, attention, concentration, or memory, and clinicians declining to describe any difficulties interacting with him during appointments. Providers also have not indicated he appears particularly fatigued during appointments (Exhibits B2F; B4F). In addition, while the claimant has received regular treatment for his impairments, this care has been quite conservative, consisting mainly of as-needed medications and regular psychiatric medication management appointments. He attended a few therapy sessions, but he reported not wishing to reduce his anxiety and he stopped this treatment, despite his psychiatrist's recommendations against doing so. He has not required psychiatric hospitalization or intensive outpatient treatment since the date he alleges he became disabled. Moreover, he has reported only taking his anti-anxiety medications once a week, and he has frequently stated that they control his symptoms. While he indicated he did not take them more often due to them becoming ineffective with frequent use, his psychiatrist has regularly prescribed his Clonazepam to be taken daily as needed and his Hydroxyzine to be taken three times daily as needed. Further, the claimant has generally told his psychiatrist that his medications do not cause any side effects (Exhibits B1F; B2F; B4F). Finally, the claimant is able to care for his personal needs, help care for his elderly mother, do chores around the house, mow the lawn, attend regular medical appointments, count change, and drive. Although the claimant's impairments do cause some symptoms, the objective findings contained in the record, the conservative care he has received,

and his admitted ability to perform a variety of daily tasks all suggest that these symptoms are not as severe or as limiting as he claims.

[AR 23-24]

After reviewing the opinions of the state agency psychologists, the ALJ again tied the medical evidence to his conclusions, explicitly making the connection by using phrases such as "this implies" and "this suggests." For example, the ALJ noted that plaintiff's medical examinations "typically fail to reveal any deficits in his attention, concentration, or memory" and described the chores and other daily activities that plaintiff is able to accomplish, as activities that "all require him to follow instructions or procedures, remain on task, work at an appropriate pace, and sustain some degree of attention and concentration. This implies that he should be able to perform simple, routine work tasks that do not require fast-paced production quotas and concentrate on these tasks for two-hour periods before requiring a break." [AR 24]. Similarly, the ALJ observed that the plaintiff "has not shown difficulty attending appointments, setting goals, or adhering to a routine when taking medications, implying that he is capable of completing a normal workday and workweek and performing activities within a schedule without restriction." [AR 24]. The Court finds that these and other examples in the ALJ's decision form the required "accurate and logical bridge" from the evidence to the ALJ's conclusions. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018).

In support of his argument that the ALJ failed "to provide any explanation of what he meant by the term 'fast-paced production quotas,'" plaintiff quotes extensively from Thomas v. Commissioner, 916 F.3d 307 (4th Cir. 2019), and a handful of cases that have followed it for the idea that "fast-paced production quotas" is not a term defined in the Social Security regulations and must be explained in the ALJ's decision; however, as another judge in this

7

court has explained:

> [i]n Thomas, the Fourth Circuit did not hold that certain terms create unacceptable parameter[s]. Rather, the Fourth Circuit remanded the case because of several flaws in the ALJ's analysis that, in combination, amounted to too little logical explanation for [the court] to conduct meaningful appellate review. Indeed, the terms' lack of definition was just one of four errors that left the court unable to determine whether substantial evidence supported the ALJ's findings. Additionally, Thomas did not create a categorical rule that failing to define certain terms constitutes a reversible error.

Taylor v. Saul, 2020 WL 4340536 (E.D. Va. July 27, 2020) (internal quotations and citations omitted).

Moreover, this case is easily distinguishable from Thomas, because here the ALJ provided significant context that enables the Court to understand the limits described in the RFC. First, the ALJ contrasts "work requiring fast-paced production quotas" with "goal-oriented work," drawing a distinction and highlighting the ALJ's meaning and intent. See Taylor, 2020 WL 4340536 at * 6 (noting that ALJ "contrasted the terms 'production rate pace' and 'goal-oriented work,' which "allow[ed] the Court to understand the distinction between the terms."). Second, the ALJ's requirement that plaintiff work in a "low stress environment" also adds meaning to the RFC's exclusion of "work requiring fast-paced production quotas." Indeed, by explaining that plaintiff cannot perform work that is "fast-paced" and based on "production quotas" but is able to perform "goal oriented" work in a "low stress environment," the ALJ provided greater detail than the RFC upheld by the Fourth Circuit in Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017), where the court found substantial evidence to support an RFC limiting plaintiff to "low stress non-production jobs with no public contact." See also Perry v. Berryhill, 765 Fed. Appx 869, 872 (explaining that the descriptive context included in the RFC at issue in Sizemore "helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations.")

Finally, the plaintiff argues that the ALJ applied the wrong standard when evaluating plaintiff's subjective complaints. The parties agree that the ALJ was required to use a two-step process, in which the ALJ first determines whether there is objective evidence of a medical impairment that could reasonably be expected to cause plaintiff's subjective complaints. The second step requires the ALJ to evaluate the intensity and persistence of the plaintiff's symptoms, by considering the record as a whole, including the plaintiff's statements, the objective medical evidence, and other relevant information. SSR 16-3P (March 16, 2016).

Plaintiff argues that the ALJ erred when performing the second step and characterizes the ALJ's decision as "specifically reject[ing] the Plaintiff's testimony regarding his subjective complaints on the basis that his complaints were inconsistent with the objective evidence." [Dkt. No. 20 at 15]. To support his argument, plaintiff erroneously relies on the Fourth Circuit's decisions in Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006) and Arakas v. Commissioner Social Security Administration, 983 F.3d 83 (4th Cir. 2020). In Hines, the plaintiff suffered severe pain caused by sickle cell disease, which is "particularly insidious because it rarely produces the objective medical evidence that clinicians desire." 453 F.3d at 561. Despite the nature of the plaintiff's disease, the ALJ required objective evidence of severity of his pain and "refused to credit Mr. Hines with having debilitating pain because a laundry list of objective indicators did not appear in [his] medical records." Id. at 563. Similarly, in Arakas, the plaintiff suffered extreme pain from fibromyalgia. "Fibromyalgia symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." 983 F.3d at 91 (internal quotations and citations omitted). The Fourth Circuit held that "ALJs may not rely on objective medical evidence (or the lack thereof) – even as just one of multiple factors – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." Id. at 97.

Plaintiff's effort to apply the holdings of Hines and Arakas to this case are unavailing. In those cases, the plaintiffs experienced pain from conditions that did not create objective findings, and the Fourth Circuit found that the ALJs erred by relying on the absence of such findings to discount the plaintiffs' subjective statements. Here, the plaintiff does not complain of pain and the ALJ did not rely on an absence of objective medical evidence. Instead, the ALJ recognized that the plaintiff's subjective statements about the intensity of his symptoms and their effect on his ability to work were inconsistent with the medical evidence, which included evidence of plaintiff being unwilling to follow his prescribed treatment plans.

The ALJ noted that plaintiff's treatment "has been quite conservative, consisting mainly of as-needed medications and regular psychiatric medication management appointments. . . . He has not required psychiatric hospitalization or intensive outpatient treatment." [AR 23]. Moreover, the record clearly shows that plaintiff chose not to fully avail himself of the conservative treatment his physicians prescribed. As the ALJ explained, the plaintiff limited his use of anti-anxiety medications to only once a week, despite the fact that his psychiatrist prescribed the medications to be taken daily[6] as needed and despite "frequently stat[ing] that the they control his symptoms" and "do not cause any side effects." [AR 23]. Plaintiff also "attended a few therapy sessions, but he reported not wishing to reduce his anxiety and he stopped this treatment, despite his psychiatrist's recommendations against doing so." [AR 23]. In June 2019, plaintiff told his primary care provider that "his anxiety was doing well with medications." [AR 23].

---

[6] Plaintiff was prescribed Clonazepam to be taken once daily as needed and Hydroxyzine to be taken three times daily as needed. [AR 23].

By describing the conservative nature of plaintiff's treatment plan, the plaintiff's decision not to follow his treatment plan despite acknowledging its efficacy, and plaintiff's ability to perform a variety of daily tasks, the ALJ provided substantial evidence to support his conclusion that plaintiff's "symptoms are not as severe or limiting as he claims." [AR 24].

In addition to considering the plaintiff's objections to the ALJ's decision, the Court has considered the record as a whole as well as the uncontested facts in the defendant's motion for summary judgment and finds that the ALJ's decision is fully supported by substantial evidence and applied the correct legal standards to that evidence.

### III. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment will be granted, the plaintiff's motion will be denied, and the final decision of the Commissioner will be affirmed by an accompanying order.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

Entered this 29 day of April, 2021.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge